<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROSE A. P., <br><br>       Plaintiff, <br><br>       v. <br><br> FRANK BISIGNANO <br> Commissioner of Social Security, <br><br>       Defendant. | Case No. 2:25-cv-03227 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Rose A. P.'s ("Plaintiff") appeal of the final decision of the

Commissioner ("Commissioner") of the Social Security Administration ("SSA")[1] denying her

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the

"Act"), 42 U.S.C. § 405(g). (ECF No. 1.) This Court has jurisdiction pursuant to 42 U.S.C.

§ 405(g). Having reviewed and considered the submissions filed in connection with the appeal and

having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons

set forth below and for good cause having been shown, Plaintiff's appeal of the Commissioner's

final decision is **GRANTED**, the Commissioner's decision is **VACATED**, and the matter is

---

[1] Frank Bisignano became the new Commissioner of the Social Security Administration ("SSA") on May 7, 2025. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is substituted as Defendant (at the time of Plaintiff's appeal, Leland Dudek was the Acting Commissioner of the SSA). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

**REMANDED** for additional administrative proceedings and further evaluation consistent with this Opinion.

## I.    BACKGROUND

### A. Procedural History

This matter arises out of a final decision denying Plaintiff's application for DIB. (Transcript of Proceedings ("Tr.") (ECF No. 5) at 1134.) On April 3, 2017, Plaintiff applied for DIB, alleging disability beginning October 22, 2015 (*id.* at 1150) based on the following allegations of impairments: cervical and lumbar spinal disorders, bilateral arthritis of the knees and hips, patellofemoral syndrome in both knees, peripheral neuropathy, obesity, and chronic venous insufficiency in both legs. (Pl.'s Br. (ECF No. 12) at 9.)

Plaintiff's DIB claim has been the subject of repeated relitigation since it was first brought in 2017. (Tr. at 266.) Plaintiff's application was initially denied because the SSA found that despite her disabilities and inability to perform her previous job, she was nonetheless still able to perform other work. (*Id.* at 17–19.) This decision was upheld by the Appeals Council. (*Id.* at 1.) Plaintiff, therefore, appealed this determination to the United States Court for the District of New Jersey where it was heard by the Hon. Susan D. Wigenton, U.S.D.J. *See Rose A. P. v. Commissioner of Social Security*, Civ. A. No. 20-13464 (D.N.J. 2022). Judge Wigenton approved a consent order, remanding the case to consider Plaintiff's remaining disabilities, namely her obesity. *Id.*, Consent Order Reversing and Remanding for Further Proceedings, Civ. A. No. 20-13464, ECF No. 15 (D.N.J. 2022). On remand, the Appeals Counsel instructed the Administrative Law Judge ("ALJ") to fully analyze the impact of Plaintiff's obesity and the level of pain she experiences. (Tr. at 710–

11.) Plaintiff also has another Supplemental Security Income ("SSI") application, which was consolidated into this case and heard by the SSA on February 8, 2022. (*Id.* at 1314–1339.)

The SSA once again found Plaintiff was able to perform unskilled sedentary work and was therefore not disabled. (*Id.* at 1202–1237.) Plaintiff appealed the case to the District Court once more. *See Rose A. P. v. Commissioner of Social Security*, Civ. A. No. 22-04730 (D.N.J. 2022). Upon filing the appeal, the Commissioner offered a consent order remanding the case yet again. *Id.* at ECF No. 11. Reconsidering the prior decision, the Appeals Counsel determined the SSA had erred in applying out of date regulations in considering Plaintiff's degree of impairment. (Tr. at 1243.) The case was then assigned to ALJ Peter R. Lee to consider the entirety of the medical evidence before him to evaluate Plaintiff's capacity in light of all her impairments, including her obesity, and "provide appropriate rationale with specific references to the evidence of record in support of the assessed limitations." (*Id.* at 1243–44.)

The ALJ held a hearing on October 2, 2023. (Tr. at 1147.) In his initial decision on February 16, 2024, the ALJ found Plaintiff was not disabled within the meaning of 42 U.S.C. § 423(d). (*Id.* at 1147.) On September 23, 2024, the Appeals Council denied Plaintiff's request for review and determined there was no basis to assume jurisdiction. (*Id.* at 1134–36.)

**B. Administrative History**

The ALJ employed the five-step process established by the SSA to evaluate whether the Plaintiff was eligible for social security and disability benefits. (*Id.* at 1151.) At step one, the ALJ found Plaintiff had no "earnings after the application date," and therefore lacked substantial gainful employment. (Tr. at 1153.) At step two, Plaintiff was determined to have "degenerative disc disease with radiculopathy, osteoarthritis of the feet and ankles, status post left wrist fracture, obesity, depressive disorder, anxiety disorder, and PTSD." (*Id.*) However, with respect to Plaintiff's

"degenerative changes of the knees, venous insufficiency, left shoulder and elbow pain, neuropathy in her feet, and migraine headaches," the ALJ found these impairments "non-severe" both "individually and in combination" because "there is no evidence on the record that they would have more than a minimal effect on claimant's ability to do basic work activities." (*Id.*) At step three, the ALJ found none of Plaintiff's impairments, either alone or in combination, met or was medically equal to one of the listed impairments in 20 C.F.R. Part 404. (*Id.* at 1156.) The ALJ therefore proceeded to step four, where he determined that Plaintiff retained "residual functional capacity to perform the full range of light work." (Tr. at 1164.) Although there was no prior past relevant work Plaintiff could return to, in step five the ALJ determined there were still relevant occupations in the economy she could perform such as microfilm mounter, small parts assembler, and sealing machine operator. (*Id*. at 1164.) The ALJ concluded Plaintiff was therefore not disabled for the purposes of the Act. (*Id.* at 1165.)

## II.    STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d

4

Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the Commissioner's decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981)). "A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). Although the Court retains the discretion to simply award or deny the specific benefits, the decision "to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.* at 221– 22 (*citing Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir. 1982); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981)). Where the record is complete, and the "deficiencies in the findings of the ALJ are not attributable to any error of the claimant," it is "unnecessary and a contravention of

fundamental justice," to require the claimant to continue to wait through additional remands. *Califano,* 637 F.2d at 973 n.1.

### III.    THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c);

6

*see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the claimant's specific impairment is not listed, the ALJ will consider the most similar listed impairment to decide whether the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

7

the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv)(f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; *see also* 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an

8

appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.,* Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm)

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). However, factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Again, substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

In appealing the ALJ's final decision, Plaintiff makes two key arguments. First, she alleges the ALJ erred by effectively failing to consider her obesity as a potential cause of disability. (ECF No. 12 at 11.) Plaintiff acknowledges that the ALJ did include an assessment of her obesity in his report, but points to its conclusory nature and the mention of impairments never raised in the record as evidence that the ALJ failed to meaningfully consider medical evidence in coming to his

conclusion. (*Id.* at 17.) Second, Plaintiff argues the ALJ's analysis regarding her RFC rests on assumptions directly contradicted by the substantial evidence available in the record. (*Id.* at 22.)

In addition to requesting remand on both grounds, Plaintiff also asks the Court to take a further step and reverse the judgment of the ALJ, claiming the record is sufficiently complete that the Court should be able to render judgment in light of the seven years without a final decision Plaintiff has had to endure. (*Id.* at 38.) The Court addresses each of these issues in turn.

**A. The ALJ Erred in Failing to Meaningfully Consider Plaintiff's Obesity.**

In the ALJ's decision, a single paragraph is dedicated to the consideration of Plaintiff's obesity and how it contributes to Plaintiff's RFC. (Tr. at 1155.) It reads:

> Although there is no specific medical listing regarding obesity, I have evaluated it pursuant to the guidelines set forth in [Social Security Ruling ("SSR")] 19-2p, including the references in the listings contained in sections 1.00Q, 3.00I, and 4.00F. As SSR 19-2p states: We will not make general assumptions about the severity or functional effects of obesity combined with other impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record. Accordingly, I have fully considered obesity in the context of the overall record evidence in making this decision.

(*Id.*) According to Plaintiff, this degree of engagement is insufficient for the ALJ to come to any conclusion as it lacks any citation to specific medical evidence on the record and contains no reasoning explaining the interplay between the evidence and the ALJ's decision.

The Court is "not permitted to reweigh the evidence or impose their own factual determinations" when reviewing the decision of the ALJ. *See Chandler*, 667 F.3d at 359. Even if the Court "would have decided the factual inquiry differently," that is not cause to set aside the decision unless the decision was not supported by substantial evidence. *Hartranft*, 181 F.3d at 360. Nevertheless, the Court is duty bound to ensure the ALJ has made "a clear and satisfactory explication of the basis on which" he has made his decision. *Cotter v. Harris*, 642 F.2d 700, 704

10

(3d Cir. 1981). An ALJ's failure to explain his findings alone is an error because it deprives the Court of its ability to perform its statutory role to review the ALJ's decision. *Burnett*, 220 F.3d at 120 (remanding a case because the ALJ failed to "fully develop the record and explain his findings").

Here, there are deficits in the ALJ's engagement with Plaintiff's obesity. Of the paragraph dedicated to his findings, four of the sentences merely lay out the standards ALJs use to assess obesity in general. (Tr. at 1155.) The final sentence then announces the ALJ's conclusion, with no factual support. (*Id.*) Furthermore, as Plaintiff points out, the ALJ references blue book sections 1.00Q, 3.00I and 4.00F—the listings for the musculoskeletal effects of obesity, asthma, and cardiac arrhythmia respectively—even though Plaintiff has never alleged any respiratory or cardiovascular impairment. (ECF No. 12 at 17.) Plaintiff surmises that this error is likely because the ALJ merely copy and pasted language from a template or another opinion, rather than squarely engage with the evidence before it. (*Id.* at 17 n.1.)

Further supporting Plaintiff's interpretation is the fact that the ALJ appears to apply the wrong law. Although the ALJ's decision claims that SSR 19-2p directs him to consider asthma and arrhythmia as analogous impairments, no such language exists in SSR 19-2p. Rather, this limited analysis comes from SSR 02-1p, which was rescinded in 2019. Although "courts have observed that SSR 02-1p and SSR 19-2p 'are largely consistent in their discussion of how obesity should be analyzed,'" the analysis contemplated in SSR 19-2p is notably broader and is not confined to specific listed impairments. *Lauren R. v. Kijakazi*, Civ. A. No. 20-15611, 2023 WL 3884120, at *4 (D.N.J. June 8, 2023) (quoting *Heck v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 20-2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021)). SSR 19-2p is clear that the ALJ is required to consider whether obesity, alone or as part of a "combination of impairments is equivalent in

11

severity to a listed impairment." For example, the ALJ is instructed to consider all "respiratory impairments" which could be affected by obesity including "asthma, sleep apnea, and obesity hypoventilation syndrome" rather than just asthma. SSR 19-2p § 2 and § 7.

Plaintiff is clear that she has never complained about cardiac or respiratory impairments. (ECF No. 12 at 17 n.1.) Therefore, the misapplication of law regarding those standards would be a harmless error. *Perez v. Comm'r of Soc. Sec.*, 521 F. App'x 51, 55 n.4 (3d Cir. 2013) (holding that applying the wrong standard was a harmless error when it would not impact the results of the analysis). However, combined with the failure to discuss plaintiff's obesity with any specificity, such an error provides strong support for Plaintiff's theory that the ALJ failed to give due consideration to her obesity.

The Commissioner does not dispute the lack of specific analysis on the part of the ALJ. (ECF No. 15 at 6–8.) Instead, the Commissioner relies on the fact the ALJ "unequivocally stated that he fully considered obesity." (*Id.* at 7–8.) This theory is contrary to the clear precedent of the Third Circuit that "an ALJ must meaningfully consider the effect of a claimant's obesity . . . [and] clearly set forth the reasons for his decision." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). "Conclusory statements . . . are insufficient." *Id.* The commissioner does not point to any part of the record where the ALJ considered Plaintiff's obesity with any specificity outside of noting her body mass index. (ECF No. 15 at 8.)

The ALJ may not simply note Plaintiff is obese and then declare he has fully considered it; he must discuss Plaintiff's objective limitations and lay out why they do or do not meet a listed impairment. *Diaz*, 577 F.3d at 504. Therefore, the Court will vacate the ALJ's decision regarding his consideration of obesity and remand for further consideration.

**B. The ALJ's determination of Plaintiff's RFC insufficiently considers evidence of Plaintiff's impairments.**

Next, Plaintiff objects to the ALJ's determination that she retained the RFC to perform light work. (ECF No. 12 at 29 (citing Tr. at 1156).) Light work is work that requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "a good deal of walking or standing . . . [such as] being on one's feet up to two-thirds of a workday . . . at [a] total of approximately 6 hours of an 8-hour workday." SSR 83-10. "Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." *Id.* Plaintiff argues that the ALJ's finding is both contradicted by the ALJ's finding that Plaintiff can only "stand and/or walk for four hours" alongside further limitations to her ability to climb, crawl, and make other motions. (ECF No. 12 at 29.) Plaintiff further objects that this conclusion was only reached by selective consideration of the evidence, including a failure to consider Plaintiff's arthritis. (*Id.* at 32.)

To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, Courts must give great deference to the ALJ's findings and may "not re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359. "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *W. World, Inc. v. Sec'y of Lab., U.S. Dep't of Lab.*, 604 F. App'x 188, 192 (3d Cir. 2015) (quoting *Hartranft,* 181 F.3d at 360). However, the Court retains the authority to overturn ALJ decisions that are conclusory, "ignores, or fails to resolve . . . countervailing evidence," or "overwhelmed by other evidence—particularly certain types of evidence (*e.g.*, that offered by treating physicians)." *See Morales*, 225 F.3d at 317.

Here, Plaintiff illustrates a troubling pattern of the assigned ALJ ignoring countervailing

13

evidence.[2] *Plummer*, 186 F.3d at 429 (holding an ALJ has a duty to consider all evidence on the record, not merely the evidence which supports his findings). For example, the Plaintiff's treating physicians determined that she suffered from severe pain which had to be managed by a combination of oxycodone and fentanyl. (Tr. at 1192.) However, based on the transcript, the ALJ only mentions Plaintiff's pain twice in passing and does so without engaging the findings of the treating physicians, which led to these prescriptions. (*Id.* at 1157–59). The Commissioner responds that the ALJ did make nuanced and detailed findings on a number of her conditions in determining Plaintiff was capable of performing light work. (ECF No. 15 at 9–10.) Therefore, according to the Commissioner, Plaintiff's attempts to bring in evidence outside of what the ALJ decided to consider in detail is "simply a request to reweigh the evidence, which is not the role of judicial review." (*Id.* at 10 (quoting *Biestek*, 587 U.S. at 103).)

The Court disagrees with the Commissioner. Although the principle that the Court may not impose its own findings is well-established, *Chandler*, 667 F.3d at 359, the Court has a duty to review the whole record to ensure that all relevant evidence is being considered, and that the ALJ has not decided to "play doctor by using her own lay opinions to fill evidentiary gaps in the record." *Reader v. Colvin*, Civ. A. No. 12-1623, 2014 WL 1653090, at *8 (M.D. Pa. Apr. 24, 2014) (quoting *Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 779 (W.D. Pa. 2013)); *see also Parrott*

---

[2] In her appellate brief, Plaintiff relies on the determinations made by prior ALJs who have handled her file. (ECF No. 12 at 31–33.) However, the Government correctly points out that vacated opinions may not be considered as evidence in the record or on appeal. *See In re Smith*, 165 F. App'x 961, 967 (3d Cir. 2006) (holding that vacating a ruling means the "slate was wiped clean"); *see also Alicea v. Comm'r of Soc. Sec.*, 855 F. App'x 494, 496 (11th Cir. 2021) ("[A] vacated ruling is officially gone, has no legal effect . . . and none of the statements made therein has any remaining force."). However, it is clear from Plaintiff's filing that she is not relying on them as persuasive evidence against the current ALJ's decision. (ECF No. 12 at 31–33.) Instead, she is using them to illustrate some of the examples of conditions and evidence which the current ALJ failed to address. Simply put, the fact the ALJ was not bound to follow the logic or conclusions of a vacated opinion is not license to outright ignore the documented conditions the vacated opinion addressed.

14

*v. Saul*, Civ. A. No. 18-9681, 2021 WL 1560711, at *6 (D.N.J. Apr. 21, 2021) (vacating an ALJ opinion which relied on the ALJ's lay opinion). Reviewing the full record, the ALJ appears to have overreached in applying his lay opinions in several respects. First, the ALJ does not discuss the rheumatoid arthritis which had persistently affected Plaintiff's knees and hips to such a degree she was prescribed a battery of opioid pain relievers, including fentanyl, to manage the pain. (Tr. at 1103–15, 1130.) The ALJ excludes this prognosis from his analysis to instead focus on whether Plaintiff displayed antalgic gait (limping) during different examinations across several years. (Tr. at 1161.)[3]

Similarly, the ALJ discounts Plaintiff's documented venous insufficiency as "not severe because there was no venous thrombosis identified." (Tr. at 1161 (summarizing the ALJ's step two analysis in refusing to credit related limiting symptoms in step four).) This reasoning confuses a potential cause of chronic venous insufficiency (thrombosis) with its severity, an unrelated feature.

---

[3] Throughout his findings the ALJ provides substantial attention to Plaintiff's documented failure to comply with the treatment protocols prescribed by her physicians. (Tr. at 1157–63.) Approximately half of the ALJ's opinion is devoted to the fact Plaintiff "has not consistently treated her impairments or followed recommendations by her providers." (*Id.* at 1163.) However, lack of treatment may be caused by many factors, including poverty or lack of insurance, for that reason mere "lack of treatment . . . [is not] a basis for discrediting her credibility regarding her pain and level of function." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) (holding that ALJ's must consider reasons for lack of treatment). While a patient's non-compliance may undermine the credibility of his or her testimony, it has limited bearing on the assessments of treating physicians and other independent, highly reliable evidence. *Morales*, 225 F.3d at 317. Finally, while the ALJ is permitted to deny a claimant who "fails, without good cause, to follow prescribed treatment that we expect would restore his or her ability to engage in substantial gainful activity," under SSR § 18-3p, the ALJ must show that proper compliance would "restore [Plaintiff] to a non-severe condition." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (holding "failure to wear prescribed elastic stockings" did not support an "inference of non-compliance" when it was cutting off circulation). However, as the ALJ demonstrates, the record contains examples of at best moderate non-compliance, such as only wearing her CAM boot—a piece of medical equipment which immobilizes the foot and ankle to help recovery—when the swelling was severe, rather than continuously as her physician recommended. (Tr. at 1160.) On remand, it is proper to take this non-compliance into account, so long as the ALJ does not use it to disregard probative evidence.

Chronic venous insufficiency is a condition where the body fails to pump enough blood against gravity, causing excessive blood to build up in the legs over time. *Chronic Venous Insufficiency*, Cleveland Clinic (July 17, 2022) [https://perma.cc/2AUF-CZYX]. Chronic venous insufficiency has many potential causes, including injury, blood pressure, obesity, heart disease, and deep vein thrombosis. *Id.* Deep vein thrombosis is a potentially life-threatening condition where blood clots form in the veins, particularly in the deep veins in the legs and lower extremities. *Deep Vein Thrombosis*, Cleveland Clinic (December 23, 2025) [https://perma.cc/W95T-QULY]. This clotting can obstruct the venous pathways, restricting blood flow from the legs and potentially causing chronic venous insufficiency; however, it can also become dislodged leading to a pulmonary embolism. *Id.* Essentially, deep vein thrombosis is a potential cause of a claimant's chronic venous insufficiency—not a descriptor of its severity.

For this reason, the Social Security's step three listings include chronic venous insufficiency as a disabling impairment; there is no requirement for a finding of thrombosis. 20 C.F.R. Part 404 Subpart P, Appendix 1 § 4.11 (the social security impairment listing under step three for chronic venous insufficiency caused which is considered severe if it occurs with incompetency or obstruction of the deep venous system alongside either excessive, firm swelling or significant ulceration). It is not plausible that an analysis of disability could dismiss a condition as non-severe at step two based on a lack of thrombosis which could still be deemed outright disabling at step three. The ALJ's analysis of Plaintiff's vascular health is contrary to the medical evidence on the record, misapplies the existing standards for examining venous insufficiency, and impermissibly relies on the lay instincts of the ALJ; it therefore is not supported by substantial evidence. *Parrott*, 2021 WL 1560711, at *6.

Plaintiff points out that the ALJ dismissed her peripheral neuropathy without justification.

16

(ECF No. 12 at 36.)[4] In his decision the ALJ concluded Plaintiff's peripheral neuropathy was non-severe because Plaintiff did not pursue treatment for the condition. (Tr. at 1154.) This reasoning is both threadbare and false. The ALJ erred by considering non-treatment as inherently non-credible without engaging with the reasons Plaintiff provided for not taking gabapentin—namely, that it did not work and had significant side effects.; *see also* SSR 16-3p (ruling an ALJ may use compliance with treatment as a factor in determining credibility but must address potential causes of non-compliance including ineffectiveness of treatment and may not use non-compliance as a free-standing basis to discredit otherwise credible evidence). In his decision the ALJ summarily dismissed this condition, writing "there is little evidence of findings or treatment for neuropathy or migraines throughout the relevant period. Accordingly, these are non-severe impairments." (Tr. at 1154.) Without consideration for the reasons a patient might decline treatment, such as lack of effectiveness, mere "lack of treatment . . . [is not] a basis for discrediting [a claimant's] credibility regarding her pain and level of function." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003).

But, perhaps more importantly, the ALJ's belief that Plaintiff was not treating her conditions is simply untrue. As the ALJ himself later notes, Plaintiff continued to take gabapentin intermittently "but it did not work." (Tr. at 1159.)[5] Instead, it is clear the ALJ has based his decision

---

[4] Peripheral neuropathy refers to nerve pain in the arms and legs and ranges from painful tingling to debilitating pain, numbness and temporary muscular paralysis. *Peripheral Neuropathy*, Cleveland Clinic (October 14, 2022) [https://perma.cc/Y8ZP-FPEC].

[5] Plaintiff's alleged experience is not an uncommon experience among patients taking gabapentin. Approximately half of patients prescribed gabapentin for neuropathic pain do not receive even moderate (≥30%) pain reduction, and roughly two-thirds do not achieve substantial (≥50%) reduction in pain. Wiffen PJ, et al., *Gabapentin for chronic neuropathic pain in adults (Review)*, Cochrane Library, at 4 (February 18, 2020) (reviewing all studies addressing the risks and benefits of gabapentin). The Cochrane Database of Systematic Reviews, has two categories of reported benefit, a drug has a "substantial benefit" if it results in a self-reported 50% reduction in symptoms,

on the fact that Plaintiff, by her own admission, did not take gabapentin *consistently* throughout the time she claims to have suffered from peripheral neuropathy. (*Id.* at 1163.). However, not aggressively pursuing a treatment which does not work, and which has significant side effects, is not evidence of non-complaince. The ALJ attempts to manufacture a contradiction between Plaintiff's testimony that gabapentin did not improve her symptoms and her representations to her healthcare providers. (Tr. at 1163.) However, upon review of the section of the record cited it is clear Plaintiff reported relief from general pain when using her oxycodone and Ativan prescriptions, not gabapentin for neuropathy. (*Id.* at 1036). She also informed her physicians, and the ALJ, that gabapentin had significant side effects. (*Id.* at 1320 (testifying the "medication . . . is so strong that it knocks you out.").)

It is worth recognizing that none of the doctors the ALJ supposedly relied on appeared to consider intermittent use of gabapentin non-complaint. (Tr. at 1436, 1539, 1589.) The demand Plaintiff should take gabapentin consistently, no matter the effectiveness, comes entirely from the ALJ—there is no indication from medical professionals it indicates non-compliance. (Tr. 1163) Given the notable negative effects associated with gabapentin and the fact it seems it did not relieve Plaintiff's symptoms, the fact Plaintiff only took gabapentin intermittently is not evidence that her symptoms were non-severe.

The ALJ also points to the fact Plaintiff possessed a "medical marijuana card but . . . never

---

and has a "moderate benefit" if it results in a 30% reduction in symptoms. Wiffen PJ, et al., *Gabapentin for chronic neuropathic pain in adults (Review)*, Cochrane Library, at 4 (February 18, 2020). Even though gabapentin does not provide relief to all patients, it possesses significant side effects, including dizziness, somnolence (persistent fatigue and sleepiness), and withdrawal—and approximately 60% of patients experience at least one adverse side effect. Id. It is not inherently uncredible that a patient does not experience relief from a given medication, and under *Newell*, an ALJ must consider the plausibility of such reasons. 347 F.3d at 547 (holding that ALJ's must consider patients' reasons for lack of treatment).

used it," as further evidence of non-compliance. (Tr. 1163.) This is, at best, misleading. Marijuana is legal in the state of New Jersey, the practical benefit of Plaintiff's medical marijuana card is that it increases the amount a consumer may legally purchase per month. N.J. Stat. Ann. § 24:6I-10f(1) (increasing the amount of purchasable marijuana from one to three ounces per month). But Plaintiff was taking a relatively low dose which lasted her three days, there is no indication she required the higher usage limits a marijuana card would have provided. (Tr. at 1547 (indicating Plaintiff used one joint every three days).) The ALJ acknowledges elsewhere in his opinion that Plaintiff was using her prescribed medical marijuana and she tested positive for its use in her drug screening, so it is difficult to say what possible relevance her decision not to acquire that marijuana with an unnecessary identification card has. (Tr. at 1012, 1059).

The ALJ's finding that Plaintiff's ability to perform certain day to day tasks such as "personal care and hygiene," "managing her money," occasional driving, and "laundry if she sat," was "inconsistent with allegations of disabling symptoms" is not supported by the record. (Tr. at 1163.) The fact Plaintiff "was not excluded from all forms of human and social activity and engaged in sporadic or transitory activity does not mean that she is not disabled for work purposes." *Nazario v. Comm'r of Soc. Sec.*, 794 F. App'x 204, 212 (3d Cir. 2019). Social security applicants are not required to "vegetate in a dark room excluded from all forms of human and social activity," to be eligible, and without "explanation as to how her activities would translate to the workplace," the in-home activities the ALJ identified, all of which are sedentary or performed while sitting, are not evidence she has RFC for light work. *Id.*

The failure to treat a condition as severe is typically considered harmless error, so long as the ALJ proceeded through to the later steps and "accounted for related possible limitations in her RFC finding." *Hicks v. Colvin*, Civ. A. No. 15 -07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14,

19

2016) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. Appx. 140, 145 (3d Cir. 2007)). Although the Commissioner did not argue the ALJ's errors were harmless, the Court will briefly address this issue. (*See generally* ECF No. 15.) However, aside from the number of conditions the ALJ improperly dismissed, the ALJ's tendency to substitute his lay opinion for reliable medical evidence pervades his step four analysis just as much as his step two analysis and conclusions. For example, the step four analysis categorically refuses to consider potential limiting symptoms associated with venous insufficiency because "there was no venous thrombosis." (Tr. at 1161.) Because related possible limitations were not accounted for, the errors in ALJ's step two analysis cannot be held harmless. *Hicks*, 2016 WL 8674251, at *8. Other errors the Court addressed, such as the ALJ's failure to engage with the degree of limitation caused by the pain from Plaintiff's arthritis are fundamental defects in the ALJ's step four analysis and are therefore not harmless. *See, supra,* at 16.

For the foregoing reasons, the Court finds the ALJ's step four determinations regarding Plaintiff's RFC and capacity to work are not supported by substantial evidence and the ALJ's determination must be vacated and remanded. In vacating this decision, the Court does not compel any particular finding with regard to any condition or form of evidence discussed above—including evidence surrounding Plaintiff's activities of daily living, or the credibility of the Plaintiff with regard to any of her conditions or reasons to pursue or not pursue any line of treatment. However, the ALJ must develop and address the evidence with specificity and may not summarily dismiss conditions without support or based on personal intuitions.

**C.  The Court Cannot Reverse the ALJ Without a Complete ecord.**

In light of the errors in the underlying ALJ opinion, Plaintiff asks the Court to directly reverse the ALJ's decision. Although the decision to reverse requires a high bar, Plaintiff's request

is bolstered by the fact that she has been awaiting a final decision on her disability claim for seven years to learn whether she is entitled to disability benefits (ECF No. 12 at 8)—a period the Third Circuit has compared to "the patience of Job". *Califano,* 637 F.2d at 973 n.1.

The Court recognizes that Plaintiff has been left in a manifestly unjust situation, awaiting an answer. Unfortunately, the Court may only reverse the decision of the ALJ "when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled." *Podedworny*, 745 F.2d at 221–22. The Third Circuit has refrained from deciding to award benefits except in cases where the evidence was sufficiently clear the Court could determine the degree of impairment without further inquiry. *See, e.g., Nazario*, 794 F. App'x at 212 (holding the Plaintiff was disabled because the vocational expert's answers to hypothetical questions squarely addressed her degree of impairment). The record here is not so developed, as Plaintiff herself tacitly admits. (ECF No. 12 at 17.) Plaintiff's first objection, which this Court agrees with, is that this ALJ failed to address the degree of impairment caused by her obesity. (*Id.*) Furthermore, although the Court has addressed the ALJ's refusal to consider certain limiting symptoms in step four, prior ALJs have assessed these conditions as potentially severe yet still reached the conclusion Plaintiff was not disabled. (Tr 1227.) Therefore, the record has not been sufficiently developed for the Court to reverse the ALJ's decision entirely, and the Court will instead vacate the decision and remand for further consideration in line with the guidance set forth in this opinion.

## V.    CONCLUSION

For the reasons set forth above, and for good cause having been shown, Plaintiff's appeal of the Commissioner's final decision is **GRANTED**, and the ALJ's decision is **VACATED** and **REMANDED** for additional administrative proceedings and further evaluation consistent with

this Opinion.


Date: July 23, 2026                          */s/Brian R. Martinotti*
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**